Filed 9/29/23  P. v. Araujo CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN PARRA ARAUJO,<br><br>    Defendant and Appellant. | F084058<br><br>(Kern Super. Ct. No. BF181629A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Martin Parra Araujo was convicted by a jury of one count of attempted murder and one count of infliction of corporal injury on a fellow parent. The jury also found true the enhancements that defendant had personally used a deadly weapon and had personally inflicted great bodily injury (GBI) in circumstances involving domestic violence. The trial court sentenced defendant to a total term of seven years to life plus six years. On appeal, defendant contends that: (1) the court's sentences on the infliction of corporal injury offense and on the GBI enhancements violate Senate Bill No. 567's (2021–2022 Reg. Sess.) ("Senate Bill 567") recent changes to Penal Code sections 1170 and 1170.1;[1] and (2) the court erred by not exercising its informed discretion under Senate Bill No. 81's (2021–2022 Reg. Sess.) ("Senate Bill 81") recent changes to section 1385 with respect to the GBI and weapon enhancements; (3) the sentences were unauthorized for failure to comply with sections 1170, 1170.1, and 1385, which excuses any possible forfeiture; and (4) if forfeiture is found, defense counsel was ineffective for failing to properly object under sections 1170, 1170.1, and 1385. We affirm.

## PROCEDURAL BACKGROUND

On December 7, 2020, the Kern County District Attorney filed an information charging defendant with: attempted murder (§§ 664, 187, subd. (a); count 1); inflicting corporal injury resulting in a traumatic condition upon the mother of the offender's children (§ 273.5, subd. (a); count 2); and child endangerment (§ 273a, subd. (a); count 3). For count 1, the information alleged that defendant acted willfully, deliberately, and with premeditation (§ 189). For all counts, the information alleged enhancements for personally inflicting GBI in circumstances involving domestic violence (§ 12022.7, subd. (e)) and personally using a deadly or dangerous weapon, to wit a knife (§ 12022, subd. (b)(1)).

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

On January 27, 2022, a jury found defendant guilty on counts 1 and 2. With respect to count 1, the jury found true the allegation that defendant acted with deliberation and premeditation. For counts 1 and 2, the jury found true the enhancements that defendant personally inflicted GBI in circumstances involving domestic violence and personally used a deadly or dangerous weapon. The jury was unable to reach a verdict with respect to count 3, and the trial court declared a mistrial.

On March 14, 2022, the trial court sentenced defendant on count 1 to a total term of seven years to life, plus a determinate term of six years (one-year for the personal use of a deadly or dangerous weapon enhancement and the five-year upper term for the GBI enhancement). The court sentenced defendant to a total of 10 years on count 2 (the four-year upper term for infliction of corporal injury, the one-year personal use of deadly or dangerous weapon enhancement, and the five-year upper term for the GBI enhancement). The sentence on count 2 was stayed pursuant to section 654. Count 3 was dismissed on motion by the People.

On March 16, 2022, defendant filed his notice of appeal.

**FACTUAL BACKGROUND**

Defendant and A.S. lived together, had been dating for over 20 years, and had four children together. Defendant and A.S. were having difficulties in their relationship. Defendant could not work due to medical conditions, and A.S. worked as an agricultural laborer. Defendant would get jealous that male coworkers would give A.S. a ride to the fields. On one occasion, in May 2020, defendant threatened A.S. with a knife not to accept a ride to work. After this incident, defendant agreed to leave the house, but he never moved out.

On the night of June 28, 2020, defendant, A.S., their adult daughter M.S., and their minor daughter J.S. were at home. A.S. and defendant had not talked the entire day, and the prior day defendant had asked A.S. to forgive him for the May 2020 incident. Defendant was lying on the sofa in the living room; A.S. was watching mass on her cell

3.

phone in the living room in front of the sofa; M.S. was in the kitchen; and J.S. was in the shower. Defendant asked M.S. to get his glucose meter for him. After M.S. left to get the device, defendant got up, grabbed A.S. by the hair, pulled her backwards, and put a knife to her throat. A.S. yelled, "[N]o!" Defendant released A.S., but then grabbed her right hand and began cutting one of A.S.'s fingers. A.S. ran into the bathroom where J.S. was taking a shower, and defendant chased after her. Defendant went into the bathroom and began stabbing A.S. M.S. called 911. Defendant stabbed A.S. seven times, including on her legs, abdomen, and heart. Defendant was calm while he was stabbing A.S. A.S. was asking defendant why he was doing this, and defendant replied because of all the times that A.S. had "betrayed" him. J.S. got out of the shower and was trying to pull defendant away from A.S. J.S. got a cut on her arm while pushing defendant.[2] M.S. pulled J.S. away and put her in a bedroom and then pulled defendant away from A.S. M.S. closed the bathroom door. M.S. and defendant were outside the bathroom, and defendant unsuccessfully attempted to reenter the bathroom. Defendant eventually started walking towards the living room. Defendant said, apparently to A.S. through the closed door, "I told you this was going to happen. This is all your fault." Defendant then cut himself in the throat and collapsed. The police and paramedics arrived shortly thereafter. A.S. was taken to the hospital, underwent surgeries for her wounds, and was eventually discharged on July 5, 2020.

### SENTENCING

On February 28, 2022, the People filed a sentencing brief in which it discussed Senate Bill 567, but not Senate Bill 81. The People's brief argued that the jury necessarily found aggravated circumstances based on the nature of the conviction. Specifically, the People argued that the aggravating circumstances found in the Rules of Court, rules 4.421(a)(1), (a)(2), and (a)(8) applied.

---

[2] The cut on J.S.'s arm was "small." J.S. cleaned the cut and did not seek medical attention.

4.

On March 14, 2022, the trial court sentenced defendant. At sentencing, defense counsel submitted the matter without comment, which we take as defense counsel accepting and supporting the recommendations of the probation report. The probation report had recommended the lower term sentences for the GBI enhancements and the corporal injury offense. A.S., M.S., and a third daughter (Y.S.) of defendant and A.S. then gave statements. After noting that it had considered the People's sentencing brief and stating that it had "thought long and hard about the appropriate sentence … considering the new sentencing guidelines," the court explained its sentencing rationale as follows:

> "The appropriate sentence in this case is one that considers the totality of the circumstances involved throughout the course of this conduct, and in circumstances in mitigation, the Court agrees with the probation department that the defendant has no prior record of criminal conduct, which is a mitigating circumstance that must be considered heavily.
>
> In considering the circumstances in aggravation, the Court is going to find, even though Probation did not indicate any, that the crime in this case, specifically related to Count 1, did involve great violence, with a high degree of cruelty.
>
> For those reasons, the Court has considered what is necessary for a conviction involving attempted murder and recognizes that the conduct attributable to the defendant went well above and beyond what would otherwise be established for purposes of a conviction, and on that basis and on balance, considering all of the defendant's conduct relating to Count 1 and Count 2, the Court is going to find that the upper term is appropriate where applicable in considering determinate sentencing schemes."

After asking defense counsel if there was anything further, defense counsel did not object to the sentence imposed but did state that he had spoken to defendant about appealing.

## DISCUSSION

### I.      Senate Bill 567

#### A.      *Parties' Arguments*

Defendant argues that the court imposed upper term sentences for count 2 and the GBI enhancements based on one aggravated factor concededly found by the jury, i.e., the defendant personally inflicted GBI and thus, acted with great violence, and one aggravating factor that was not found by the jury, i.e., the offense involved a high degree of cruelty.  Defendant argues that it cannot be determined whether a jury would have found "a high degree of cruelty" beyond a reasonable doubt.  Defendant also argues that it is further unclear how the court would have exercised its discretion given the presumption in favor of the middle term and in light of the single aggravating factor that was necessarily found true by the jury.  Therefore, defendant argues that the sentence must be vacated, and the case remanded.

The People respond that defendant forfeited this claim because defense counsel made no objections at sentencing.[3]  Alternatively, the People argue that any error was harmless.  The jury would have found beyond a reasonable doubt that defendant acted with great violence because the jury already found that he repeatedly stabbed A.S. and inflicted GBI.  There is also no reasonable probability that the jury would not have found that defendant acted with a high degree of cruelty.  Alternatively, the court's rationale shows that there is no reasonable probability that the court would have imposed a lesser sentence if it only considered the great violence aggravating factor.

We agree with the People that there is no reversible error.

---

[3] "[A]n appellate court is generally not prohibited from reaching questions that have not been preserved for review by a party." (*People v. Smith* (2003) 31 Cal.4th 1207, 1215.)  Assuming that the People's forfeiture argument is correct, we choose to exercise our discretion and will address the merits of defendant's argument. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 520; *People v. Bradford* (2007) 154 Cal.App.4th 1390, 1411.)

**B.** *Legal Standards*

**1.     Senate Bill 567**

Effective January 1, 2022, through Senate Bill 567 and pursuant to section 1170, "when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if a jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44; see § 1170, subd. (b).) "Section 1170.1 likewise now provides that the court may impose the upper term for an enhancement 'only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' " (*People v. Butler* (2023) 89 Cal.App.5th 953, 958, review granted Mar. 28, 2023, S279633; § 1170.1, subd. (d)(2).)

**2.     Harmless Error**

If a trial court fails to follow section 1170, subdivision (b), or section 1170.1, subdivision (d), our court has articulated two possible standards of review.

**a.     *The Dunn Standard***

In *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted October 12, 2022, S275655 (*Dunn*), a three-question framework was established. First, we determine: "(1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless." (*Id.* at pp. 409–410, fn. omitted.) If the answer to question (1)(b) is "no," then we determine

"(2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing .…" (*Id.* at p. 410.) Under the *Dunn* framework, the "reasonable probability" standard of *People v. Watson* (1956) 46 Cal.2d 818 is incorporated into questions (1)(b) and (2). (*Dunn*, at pp. 407, 409–410).

### b.     *The Falcon Standard*

*People v. Falcon* (2023) 92 Cal.App.5th 911, review granted September 13, 2023, S281242 (*Falcon*) took a different approach than the three-question framework of *Dunn*. *Falcon* concluded that resentencing for a section 1170, subdivision (b) or section 1170.1, subdivision (d) error is "unwarranted *only if* two requirements are met: (1) the upper term sentence remains legally valid under federal and state law, *and* (2) there is a clear indication the trial court would have imposed the upper term sentences had it been aware of its circumscribed discretion under the newly amended sentencing law." (*Falcon*, at p. 921; see also *id.* at pp. 938, 951.) Instead of *Watson*, *Falcon* question number (2) adopted the "clear indication" standard of *People v. Gutierrez* (2014) 58 Cal.4th 1354. (*Falcon*, at p. 921.) Of note, *Falcon* repeatedly emphasized the appropriateness of the *Gutierrez* standard in the context of a retroactive application of Senate Bill 567. (*Falcon*, at pp. 921, 924, 926–927, 933–934, 938, 941, 943, 949–951.) In fact, *Falcon* expressly stated its two-question standard applied to retroactive applications of Senate Bill 567. (*Falcon*, at pp. 921 ["We … hold that upon retroactive application of Senate Bill 567 to upper term sentences imposed [§ 1170], resentencing is unwarranted *only if* two requirements are met …"], 951 ["In sum, whether resentencing of an upper term sentence is the appropriate remedy on retroactive application of amended section 1170(b) involves two relevant questions."].)

There is no tension between *Falcon* and *Dunn* with respect to *Dunn* question (1)(a). There is, however, tension with respect to *Dunn* question (2) and *Falcon* question (2). With respect to these two disparate questions, we believe that the *Watson* reasonable probability standard in *Dunn* question (2) is the appropriate question in this case.

### c.    *Direct Application of Senate Bill 567*

This case does not involve the retroactive application of Senate Bill 567 (2021–2022 Reg. Sess.). The sentence was imposed in March 2022, three months after the amendments to Senate Bill 567 came into effect. By the express terms of *Falcon*, its two-question test applies in retroactive applications.[4] (*Falcon*, *supra*, 92 Cal.App.5th at pp. 921, 951.) Further, the prosecutor highlighted Senate Bill 567 in a sentencing memorandum, and the trial court stated that it had considered the appropriate sentence "in light of the new sentencing guidelines." The court was clearly aware of Senate Bill 567's amendments and was attempting to impose a sentence consistent with those amendments. If we were to reverse the trial court, we would be remanding for the court to apply the same laws that it already applied in March 2022. (Cf. *People v. McDaniels* (2018) 22 Cal.App.5th 420, 426 ["When a trial court has abused its discretion in choosing among available sentencing options, such as by relying on an improper sentencing factor, a reviewing court must still affirm unless 'the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) In these situations, the trial court has revealed which sentencing choice it prefers, and the reviewing court must decide whether there is a reasonable probability that the trial court's lawful exercise of discretion on remand will lead it to make a different choice."].) Finally, *Falcon* itself recognized that

---

[4] We recognize that *Dunn* involved a retroactive application of Senate Bill 567. (*Dunn*, *supra*, 81 Cal.App.5th at p. 403.) However, *Dunn* did not limit itself to retroactive applications of Senate Bill 567 and, because we conclude that the *Watson* standard is applicable, it is useful to point out *Falcon*'s express limitation.

9.

*Watson* has application when there has not been an intervening change in the sentencing laws:

> "The harmless error test under *Watson* has indeed been applied in cases where a sentencing court considered improper sentencing factors. (See *People v. Price* (1991) 1 Cal.4th 324, 492; see also [*People v.*] *Avalos* [1984] 37 Cal.3d [216,] 233 [improper dual use of facts].) But, in those cases, the underlying sentencing scheme had not changed in the interim. The sentencing court revealed its sentencing choice under a particular sentencing scheme, and the reviewing court decided whether there was a reasonable probability the court's lawful exercise of its discretion on remand would lead it to make a different choice under the same sentencing framework." (*Falcon*, at p. 950, fn. omitted.)

*Falcon*'s recognition of *Watson's* application is consistent with the California Supreme Court, which has held that if a "trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People v. Price*, *supra*, 1 Cal.4th at p. 492; see *In re F.M.* (2023) 14 Cal.5th 701, 715.) In sum, because this is not a retroactive application case and the court would not be applying a law that changed in the interim, and because *Dunn* question (2) incorporates the *Watson* reasonable probability standard consistent with *Price*, we find that *Dunn* question (2) is the appropriate standard for harmless error in this case.[5]

**C.  *Analysis***

The trial court justified imposition of the upper term for the GBI enhancements and the corporal injury offense because the crimes involved "great violence, with a high degree of cruelty."[6] This is an invocation of California Rules of Court, rule 4.421(a)(1),

---

[5] Because this case does not involve the retroactive application of Senate Bill 567, we need not resolve any other tensions between *Dunn* and *Falcon*.

[6] The parties both view the trial court as relying on "great violence" and "high degree of cruelty" as two independent considerations, even though they are both found under California Rules of Court, rule 4.421(a)(1). That is, the parties view the court as

which reads: "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).)

Defendant expressly concedes, both in his opening brief and his reply, that the jury necessarily found or would have found that he committed attempted murder with "great violence" because it found the GBI enhancement to be true. The uncontradicted (and in many respects corroborated) trial testimony of A.S. demonstrated that defendant placed a knife to A.S.'s throat, grabbed her hand and began cutting her finger, pursued her into the bathroom as she fled, forced his way into the bathroom, stabbed her seven times throughout her body (including in her heart), and only stopped because of the physical intervention of M.S. and J.S. Given the jury's true finding on the GBI enhancement, A.S.'s testimony, and defendant's express concession, we conclude beyond a reasonable doubt that the jury would have found beyond a reasonable doubt that count 1 was committed with "great violence" for purposes of California Rules of Court, rule 4.421(a)(1). Therefore, because the "great violence" aggravating factor is adequately supported, we answer *Dunn* question (1)(a) and *Falcon* question (1) with respect to the "great violence" aggravating factor in the affirmative. (*Falcon*, *supra*, 91 Cal.App.5th at pp. 921, 951; *Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.)

With respect to the "high degree of cruelty" factor, there is no dispute that the jury was not asked to find this factor beyond a reasonable doubt. Unlike the "great violence" factor, defendant does not concede that this circumstance is adequately supported. For purposes of this appeal, we will assume without deciding that this aggravating factor was

---

essentially citing rule 4.421(a)(1) twice. We cannot say that the parties' interpretation of the record is unreasonable. "[T]he use of the disjunctive 'or' makes clear that the rule may be satisfied by cruel, vicious or callous acts other than those involving great violence, great bodily harm, or threat of great bodily harm." (*People v. Duran* (1982) 130 Cal.App.3d 987, 990.) Therefore, we will also view the court's statement as identifying two separate considerations under rule 4.421(a)(1).

not adequately supported under state and federal law. Under both *Dunn* and *Falcon*, this assumption leads us to question (2) of the *Dunn* harmless error analysis. As discussed above, the harmless error analysis to be applied in this case is the *Watson* standard.

At sentencing, the court explained that it had thought "long and hard" about the sentence to be imposed under "the new sentencing guidelines" and considered the totality of the circumstances. The court also heard and considered the negative statements of A.S., M.S., and Y.S. at the sentencing hearing. Further, the court gave great weight to the mitigating factor that defendant had no prior criminal record. However, the court was clearly impressed by the nature of the crimes committed. The court made the "great violence" finding apart from/contrary to the recommendations of the probation report, which did not identify any factors in aggravation. The "great violence" finding was also made to the exclusion of two other aggravating factors (Cal. Rules of Court, rules 4.21(a)(2) and (a)(8)) that had been urged by the prosecutor in the sentencing memorandum. No one disputes the propriety of this finding in relation to defendant's conduct towards A.S. After finding aggravating factors, the court explained that it believed that defendant's conduct "went well above and beyond what would otherwise be established for purposes of a conviction …." That is, the court believed that defendant's conduct significantly exceeded what would otherwise be necessary to sustain a conviction. The court's observation relates to defendant's conduct in general during the offenses and was made in relation to the elements of the offenses charged. It does not appear that this observation would change simply by eliminating the descriptor "high degree of cruelty" since the observation would continue to be based on defendant's conduct as described by witnesses and as depicted in exhibits (all of which were seen and heard by the court), and the observation would remain consistent with the "great violence" finding alone. We cannot conclude that the court's observation would be different if the court had found only "great violence" and had not found a "high degree of cruelty."

12.

A single aggravating circumstance is sufficient to impose an upper term sentence. (*People v. Black* (2007) 41 Cal.4th 799, 813.)  The trial court was therefore permitted to impose an upper term sentence based on the "great violence" finding alone.  Given the court's observations and findings (particularly the "well above and beyond" observation), we conclude that it is not reasonably probable that the court would have imposed a sentence lower than the five-year upper term for the GBI enhancements or the four-year upper term on the corporal injury offense if the court had only identified "great violence" and not identified a "high degree of cruelty."  Therefore, any section 1170 or 1170.1 error was harmless.  (See *People v. Price*, *supra*, 1 Cal.4th at p. 492; *Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410; see also *In re F.M.*, *supra*, 14 Cal.5th at p. 715.)

## II.    Senate Bill 81

### A.    *Parties' Arguments*

Defendant argues that even though section 1385, subdivision (c)(3)(B), applied at the sentencing, the record does not reflect that the trial court exercised its informed discretion under this law.  There is no indication in the record that the court understood the scope of its discretion under section 1385, subdivision (c), and neither counsel raised section1385, subdivision (c), at oral argument or in briefing.  Thus, it is necessary to remand this matter for the court to affirmatively and expressly exercise its discretion under section 1385, subdivision (c).

The People argue that defendant forfeited this claim by failing to object to any errors regarding section 1385, subdivision (c).[7]  Alternatively, the People argue in part that the record fails to show that the trial court did not follow 1385, subdivision (c).

---

[7] Assuming that the People's forfeiture argument is correct, we again choose to exercise our discretion and will address the merits of defendant's argument. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161, fn. 6; *People v. Gutierrez*, *supra*, 174 Cal.App.4th at p. 520; *People v. Bradford*, *supra*, 154 Cal.App.4th at p. 1411.)

Therefore, it should be presumed that the trial court followed the law and made any necessary findings.

We agree with the People.

### B.      *Legal Standards*

#### 1.      Section 1385, subdivision (c)

Through Senate Bill 81 (2021–2022 Reg. Sess.), and as of January 1, 2022, California law provides that a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295; *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093–1094, review granted Apr. 12, 2023, S278894.) In exercising its discretion under subdivision (c)(1), a trial court "shall consider and afford great weight to evidence offered by the defendant" to prove one of nine enumerated mitigating circumstances. (§ 1385, subd. (c)(2); *People v. Mendoza*, at pp. 295–296; *People v. Ortiz*, at pp. 1093–1094.) "Proof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2); *People v Mendoza*, at p. 299; *People v. Ortiz*, at pp. 1093–1094.) The term "endanger public safety" is statutorily defined as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2); *People v. Mendoza*, at pp. 295–296; *People v. Ortiz*, at pp. 1093–1094.) There is no requirement for the trial court to consider particular factors in determining whether dismissal would endanger public safety. (*People v. Mendoza*, at p. 299.)

#### 2.      General Appellate Presumptions

"Absent evidence to the contrary, [appellate courts] presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042; see *People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Martinez* (2017)

14.

10 Cal.App.5th 686, 728.) Moreover, appellate courts "presume that a judgment or order of the trial court is correct, and ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*People v. Giordano* (2007) 42 Cal.4th 644, 666, quoting *Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564; see *People v. Martinez*, at p. 728.) "Thus, where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order." (*People v. Stowell*, at p. 1114; see *In re Julian R.* (2009) 47 Cal.4th 487, 499.)

## C. *Analysis*

Defendant does not argue that the trial court was required to strike an enhancement under section 1385, subdivision (c), or that the court could not have imposed a sentence for both the weapon and GBI enhancements. Rather, defendant requests that we presume that the court was unaware of Senate Bill 81/section 1385, subdivision (c), simply because no party raised the law and the court never cited to it or made express findings under it. However, section 1385, subdivision (c), contains no express requirement that a trial court articulate any findings or rulings, be it the striking of, or the refusal to strike, an enhancement. (§ 1385, subd. (c); cf. *id.*, subd. (a) and *In re Large* (2007) 41 Cal.4th 538, 550 [noting the express findings requirement of § 1385, subd. (a) if a strike is dismissed].) Therefore, in the face of a silent record like this one, and in the absence of an affirmative duty to make express findings, we presume that the court knew about section 1385, subdivision (c), had an adequate basis for any section 1385, subdivision (c) findings, and that the findings were correct. (See *In re Julian R.*, *supra*, 47 Cal.4th at pp. 498–499; *People v. Giordano*, *supra*, 42 Cal.4th at p. 666; *People v. Stowell*, *supra*, 31 Cal.4th at p. 1114; *Denham v. Superior Court of Los Angeles County*, *supra*, 2 Cal.3d at p. 564; *People v. Martinez*, *supra*, 10 Cal.App.5th at p. 728.) None of defendant's arguments to the contrary are sufficient to rebut these established

15.

appellate presumptions.  Thus, defendant has failed to show error with respect to section 1385, subdivision (c).

## III.	Unauthorized Sentence and Ineffective Assistance of Counsel

We read defendant's arguments regarding an unauthorized sentence and ineffective assistance of counsel as arguments made in the event that we find forfeiture. (E.g. *People v. Anderson* (2020) 9 Cal.5th 946, 962 ["The unauthorized sentence doctrine is designed to provide relief from forfeiture for 'obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings.'  [Citation.]  It applies when the trial court has imposed a sentence that 'could not lawfully be imposed under any circumstances in the particular case.' "].)  However, we are not enforcing the forfeiture doctrine in this case.  As discussed above, we have exercised our discretion to address the merits of defendant's Senate Bill 567 and Senate Bill 81 claims.

## DISPOSITION

The judgment is affirmed.


POOCHIGIAN, Acting P. J.
WE CONCUR:


FRANSON, J.


SNAUFFER, J.


16.